(No. 91547.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROY I. CABALLES, Appellant.

*Opinion filed November 20, 2003.*

THOMAS, J., joined by FITZGERALD and GARMAN, JJ., dissenting.

Ralph E. Meczyk, Lawrence H. Hyman and Richard M. Goldwasser, all of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Mary A. Fleming, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Roy I. Caballes, challenges the procedures used by police during a routine traffic stop. Defendant unsuccessfully attempted to suppress evidence of marijuana found in the trunk of his car after an alert by a drug-detection dog and was subsequently convicted of one count of cannabis trafficking (720 ILCS 550/5.1(a) (West 1998)). The appellate court affirmed the conviction, finding that reasonable articulable suspicion was not needed to conduct a canine sniff and that defendant was unjustifiably detained by the police for only a *de minimis* period of time. We reverse and hold that the trial court should have granted defendant's motion to suppress based on the unjustified expansion of the scope of the stop. See *People v. Cox*, 202 Ill. 2d 462 (2002).

## BACKGROUND

On November 12, 1998, Illinois State Police Trooper Daniel Gillette stopped defendant on Interstate Route 80 in La Salle County for driving 71 miles per hour in a zone with a posted speed limit of 65 miles per hour. Trooper Gillette radioed the police dispatcher that he was making the traffic stop. On hearing Gillette's radio transmission reporting the stop, Trooper Craig Graham of the Illinois State Police Drug Interdiction Team announced to the dispatcher he was going to meet Gillette to conduct a canine sniff. Gillette, however, did not request Graham's assistance.

Gillette approached defendant's car, informed him that he was speeding, and asked for his driver's license, vehicle registration, and proof of insurance. Defendant complied with Gillette's requests. Gillette testified that while at defendant's car he noticed an atlas on the front seat, an open ashtray, the smell of air freshener, and two suits hanging in the back seat without any other visible luggage.

Gillette then instructed defendant to reposition his car on the shoulder of the road so the two vehicles would

be out of traffic and to come back to the squad car because it was raining. Defendant complied, and Gillette told defendant he was only going to write a warning ticket for speeding. Gillette then called the police dispatcher to ascertain the validity of defendant's license and to check for outstanding warrants.

While waiting for the results of the license check, Gillette asked defendant where he was going and why he was "dressed up." Defendant replied that he was moving from Las Vegas to Chicago. He was accustomed to being dressed up because he was a salesman, although he was not currently employed. Gillette testified that defendant continued to act nervous even after being told he was receiving only a warning ticket. Gillette considered defendant's continued nervousness unusual.

Dispatch informed Gillette that defendant had surrendered a valid Illinois license to Nevada, but the validity of his Nevada license was not confirmed for two more minutes. After receiving that confirmation, Gillette requested defendant's criminal history. He then asked defendant for permission to search his vehicle, and defendant refused to give consent.

Gillette next asked defendant if he had ever been arrested, and defendant responded that he had not. The dispatcher subsequently reported that defendant had two prior arrests for distribution of marijuana, and Gillette began to write the warning ticket. He was interrupted by another officer calling him over the radio on an unrelated matter. Gillette testified he was still writing the warning ticket when Trooper Graham arrived with his drug-detection dog and began walking around defendant's car. The dog alerted at defendant's trunk in less than a minute. After Graham advised him of the alert, Gillette searched defendant's trunk and found marijuana.

Defendant was then arrested and taken to the police station, where he signed the warning ticket. He was

subsequently charged with one count of cannabis trafficking (720 ILCS 550/5.1(a) (West 1998)).

Defendant filed a motion to suppress the drugs found in the trunk and to quash the arrest. The trial court denied the motion and found defendant guilty after a bench trial. Defendant was sentenced to 12 years in prison and ordered to pay a street value fine of $256,136.

Defendant appealed, and the appellate court affirmed, finding that the police did not need reasonable articulable suspicion to justify the canine sniff and that, although the criminal history check improperly extended defendant's detention, the delay was *de minimis*. No. 3—99—0932 (unpublished order under Supreme Court Rule 23). This court granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

On appeal, defendant challenges the denial of his motion to suppress the evidence uncovered by the canine sniff. This court recently decided a similar issue in *People v. Cox*, 202 Ill. 2d 462 (2002). In that case, we applied the two-part test adopted in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), to determine the overall reasonableness of the stop. *Cox*, 202 Ill. 2d at 467. Although a traffic stop was not at issue in *Terry*, this court has previously applied the principles of that case to routine traffic stops. See *People v. Gonzalez*, 184 Ill. 2d 402, 421-22 (1998) (citing *Michigan v. Long*, 463 U.S. 1032, 1047-52, 77 L. Ed. 2d 1201, 1218-22, 103 S. Ct. 3469, 3480-82 (1983), and *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12, 54 L. Ed. 2d 331, 337-38, 98 S. Ct. 330, 334 (1977)). Accordingly, we will also apply the *Terry* test in this case. We must consider: "(1) 'whether the officer's action was justified at its inception' and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *People v. Brownlee*, 186 Ill. 2d 501, 518-19 (1999), quoting *Terry*,

392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. Here, it is undisputed that the traffic stop was properly initiated. Thus, we need only examine the second part of the *Terry* test, concerning the reasonableness of the officer's conduct. The State bears the burden of establishing that the conduct remained within the scope of the stop. *Cox*, 202 Ill. 2d at 467.

In *Cox*, we concluded that evidence obtained by a canine sniff was properly suppressed because calling in a canine unit unjustifiably broadened the scope of an otherwise routine traffic stop into a drug investigation. *Cox*, 202 Ill. 2d at 469, 471. We emphasized that the sniff was impermissible without " 'specific and articulable facts' " to support the stopping officer's request for the canine unit. *Cox*, 202 Ill. 2d at 470-71.

Here, as in *Cox*, the State has not offered sufficient justification for implementing a canine sniff. The police did not detect the odor of marijuana in the car or note any other evidence suggesting the presence of illegal drugs. See *Cox*, 202 Ill. 2d at 469. Although Officer Gillette did not actively summon Trooper Graham and his dog for the purpose of conducting a canine sniff, as occurred in *Cox*, the overall effect remains the same. As in *Cox*, the police impermissibly broadened the scope of the traffic stop in this case into a drug investigation because there were no specific and articulable facts to support the use of a canine sniff. See *Cox*, 202 Ill. 2d at 469.

Moreover, the observations made by Officer Gillette during the stop that (1) defendant said he was moving to Chicago, but the only visible belongings were two sport coats in the backseat of the car, (2) the car smelled of air freshener, (3) defendant was dressed for business while traveling cross-country, even though he was unemployed, and (4) defendant seemed nervous were insufficient to support a canine sniff. The lack of visible luggage in the interior of the car may be readily explained, since any

personal items being transported could have been stored in the trunk or shipped separately. While air fresheners may be used to mask the odor of contraband, air fresheners are also used in cars to mask other odors such as cigarette smoke. As for defendant's choice of travel attire, we fail to see how his stated preference for business clothing suggests any involvement in past or present criminal activity. Also, the general allegation that defendant appeared nervous, without more, cannot serve as a reasonable basis for further detaining defendant. See *People v. Ortiz*, 196 Ill. 2d 236, 266-67 (2001).

Finally, even when these factors are viewed together, they constitute nothing more than a vague hunch that defendant may have been involved in possible wrongdoing. Accordingly, we hold that the trial court should have granted defendant's motion to suppress based on the unjustified expansion of the scope of the stop.

## CONCLUSION

Here, as in *Cox*, 202 Ill. 2d at 470-71, a canine sniff was performed without " 'specific and articulable facts' " to support its use, unjustifiably enlarging the scope of a routine traffic stop into a drug investigation. Under these circumstances, the trial court should have granted defendant's motion to suppress the evidence obtained after the police dog's alert.

The judgments of the appellate court and the trial court are reversed.

*Judgments reversed.*

JUSTICE THOMAS, dissenting:

With today's decision, the *dicta* in *People v. Cox*, 202 Ill. 2d 462 (2002), becomes the law. Because I strongly disagreed with the *Cox dicta*, I dissent from the majority opinion.

In *Cox*, this court upheld a suppression order on the basis that the defendant had suffered an illegal deten-

tion. *Cox*, 202 Ill. 2d at 469-70. After so concluding, the court tacked on a gratuitous section that concluded that the police may not conduct a canine sniff of a vehicle unless they have a reasonable, articulable suspicion that the car's occupants are possessing a controlled substance. *Cox*, 202 Ill. 2d at 470-71. According to the *Cox* majority, *Terry* principles govern whether the police may conduct a canine sniff of a lawfully detained vehicle. *Cox*, 202 Ill. 2d at 466-68.

As I explained in my dissent, the section of the majority opinion dealing with the canine sniff was *dicta* because the majority had already concluded that the evidence had to be suppressed because the defendant was subjected to an illegal detention. See *Cox*, 202 Ill. 2d at 478 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.); see also *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 470 (1997) (generally, this court will not "engage in speculative analysis or *** render an advisory opinion *** where, as in the instant case, such analysis or opinion is not necessary for the disposition of the cause"). In the case before us, the *Cox dicta* supplies the sole support for the majority's holding, and thus the *dicta* is now the law.

Typically, having once voiced disagreement with an opinion, a justice will follow the opinion in future cases because of *stare decisis* considerations. I cannot do that with *Cox* because that case is wholly incompatible with United States Supreme Court cases construing the fourth amendment. This court is obligated to follow decisions of the United States Supreme Court on questions of federal constitutional law, and I cannot join an opinion that fails to do so.

As I explained in *Cox*, under the Supreme Court cases, a canine sniff is not a search. See *City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000); *United States v. Place*, 462 U.S. 696, 77 L.

Ed. 2d 110, 103 S. Ct. 2637 (1983). In *Cox*, the majority refused to acknowledge that a canine sniff is not a search and failed to discuss *City of Indianapolis* or *Place*. If a sniff is not a search, then the police do not need probable cause to conduct one. Further, allowing a canine to sniff a vehicle that is already detained does not transform the seizure into a fourth amendment search. The Supreme Court made this plain in *City of Indianapolis*:

> "It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment. [Citation.] The fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the seizure into a search. [Citation.] Just as in *Place*, an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics. [Citation.] Like the dog sniff in *Place*, a sniff by a dog that simply walks around a car is 'much less intrusive than a typical search.' [Citation.]" *City of Indianapolis*, 531 U.S. at 40, 148 L. Ed. 2d at 342-43, 121 S. Ct. at 453.

After ignoring the cases holding that canine sniffs are not searches, the *Cox* majority held that sniffs were controlled by *Terry* principles, even though the Supreme Court has made it clear that *Terry* applies only to searches for weapons. It has never been extended to general searches for incriminating evidence. As I explained in *Cox*:

> "I also disagree with the appellate court's holding (and the majority's apparent implied holding) that canine sniffs should be considered limited investigatory stops governed by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *Terry* allows the police to briefly detain an individual when the officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884. Additionally, the officer is allowed, without a warrant, to conduct a careful limited search of the person when his observations

reasonably lead him to believe that the person might be carrying a weapon. The purpose of the 'frisk' is to allow the police, for their own safety and the safety of others, to determine if the person is *armed. Terry,* 392 U.S. at 27, 20 L. Ed. 2d at 90, 88 S. Ct. at 1883. The Court reached its decision by balancing the need to search against the invasion the search entails. *Terry,* 392 U.S. at 21, 20 L. Ed. 2d at 905-06, 88 S. Ct. at 1879-80, quoting *Camara v. Municipal Court,* 387 U.S. 523, 536-37, 18 L. Ed. 2d 930, 940, 87 S. Ct. 1727, 1735 (1967). As Professor LaFave has noted, however, 'there is no search-for-evidence counterpart to the *Terry* weapons search, permissible on only a reasonable suspicion that such evidence would be found.' 4 W. LaFave, *Search & Seizure* § 9.5(g), at 300 (3d ed. 1996). See also *Minnesota v. Dickerson,* 508 U.S. 366, 373, 124 L. Ed. 2d 334, 344, 113 S. Ct. 2130, 2136 (1993) (sole justification for a *Terry* frisk is the protection of the police officer and others, not to gather evidence); *People v. Flowers,* 179 Ill. 2d 257, 263 (1997) (same); *Arizona v. Hicks,* 480 U.S. 321, 328-29, 94 L. Ed. 2d 347, 356, 107 S. Ct. 1149, 1154 (1987) (refusing to recognize an intermediate type of search between a plain-view inspection and a 'full-blown search' that would merely require a reasonable suspicion); *Ybarra v. Illinois,* 444 U.S. 85, 93-94, 62 L. Ed. 2d 238, 247, 100 S. Ct. 338, 343 (1979) (*Terry* cannot be understood to allow any search whatever for anything but weapons); *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 103 L. Ed. 2d 639, 661, 109 S. Ct. 1402, 1414 (1989) (balancing test is appropriate only when warranted by special needs beyond the normal need for law enforcement). Thus, the majority's apparent belief that a canine sniff for narcotics is a search that can be conducted on an officer's mere reasonable suspicion impermissibly extends *Terry* to general searches for evidence." *Cox,* 202 Ill. 2d at 487-88 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.).

The majority's opinion is wholly invalid on this ground because the Supreme Court requires *probable cause* for warrantless searches of vehicles. See, *e.g., Wyoming v. Houghton,* 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414-15, 119 S. Ct. 1297, 1300 (1999). If a sniff is a search, then

the police cannot conduct one in the absence of probable cause. Thus, in trying to restrict the authority of the *police* in a routine traffic stop, the majority has unwittingly restricted a *defendant's* fourth amendment rights by applying *Terry* to what the majority believes to be a search for incriminating evidence.

In another passage that bears repeating, I pointed out the majority's dilemma:

> "In sum, the answer to the question of whether a canine sniff is a search leads to two possible outcomes. If a sniff is a search, then the police need probable cause to conduct one. If a sniff is not a search, then neither the fourth amendment nor article I, section 6, of the Illinois Constitution is implicated. There simply cannot be a 'reasonable suspicion' middle ground because the United States Supreme Court has not expanded *Terry* to general searches for incriminating evidence, as opposed to searches for weapons.
>
> The majority thus refuses to answer the threshold question, because an answer cannot lead to its result. Instead, the majority has issued a policy decision with no foundation in the law." *Cox*, 202 Ill. 2d at 489 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.).

In the case before us, the majority has not held that defendant's vehicle was subjected to an illegal detention. Therefore, because the police did not impermissibly extend the traffic stop to allow the canine to sniff defendant's car, defendant's fourth amendment rights were not violated. The canine sniff was not a search, and thus the police did not need probable cause or a reasonable suspicion of wrongdoing before conducting it.

As with *Cox*, this decision is wholly incompatible with United States Supreme Court case law construing the fourth amendment and is subject to reversal by that court. Accordingly, I cannot join in this opinion, or in any other one that follows and applies the *Cox* rule.

JUSTICES FITZGERALD and GARMAN join in this dissent.