STATE OF NEBRASKA, APPELLEE, V.
BRIAN A. VERLING, APPELLANT.
694 N.W.2d 632

Filed April 1, 2005.   No. S-04-562.

Jeff T. Courtney, of Pfeffer & Courtney, for appellant.

Jon Bruning, Attorney General, and Matthew M. Enenbach for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Brian A. Verling appeals his conviction in the district court for Douglas County on one count of unlawful possession with intent to deliver a controlled substance. The principal issue on appeal is whether Verling's Fourth Amendment rights were violated when law enforcement officers, alerted by a drug detection dog, searched the rented vehicle he had been operating after issuing a warning citation for speeding. We conclude that Verling's constitutional rights were not violated and affirm his conviction.

## FACTS

On February 6, 2003, Stephen W. Worley, a "K-9 unit" police officer, stopped a sport utility vehicle eastbound on Interstate 80 near 72d Street in Omaha, Nebraska, after he observed it passing other vehicles and radar indicated the vehicle was speeding. When he approached the vehicle, he observed the driver and a front seat passenger who he subsequently identified as Verling and Matt Klinicki, respectively. Hearing extremely loud music when Verling rolled down his window, Worley found it odd that Klinicki appeared to be sleeping. He also noticed a "very strong orange or citrus odor" emanating from the vehicle. Worley testified that such odor is commonly used as a method of concealing the scent of illegal drugs.

Worley noticed that Verling's hands were shaking as he produced his driver's license and registration documents. Worley took note of the fact that the vehicle had been rented, knowing from experience that persons who transport unlawful drugs commonly use rental vehicles in order to avoid seizure of their personal vehicles. Although the vehicle had been rented in Arizona, Verling had an Illinois driver's license. This information piqued Worley's suspicion because he knew that unlawful drugs were commonly transported from Arizona to points east, including major cities such as Chicago, Illinois.

At Worley's request, Verling accompanied him to Worley's police cruiser where Worley ran a data check on Verling's license. The data check revealed that Verling had no criminal record and that the vehicle was not stolen.

Worley initiated a conversation with Verling while they were seated in the police cruiser. Verling stated that he and Klinicki had flown from Illinois to Phoenix, Arizona, to visit Verling's girl friend, staying at a hotel while in Phoenix, and that they were driving back to Illinois because he disliked air travel. Worley ascertained that the vehicle had been rented on February 3, 2003, and was due to be returned on February 5. During their conversation, Worley noted that Verling was attempting to "steer the conversation" and that he appeared "increasingly nervous" when Worley inquired about the origin and destination of his journey. Verling asked questions about Worley's drug detection dog and whether Worley knew about a "certain strip club" in Iowa. Worley testified

that he was surprised by Verling's question about the strip club and that based upon his experience, individuals engaged in criminal activity commonly attempt to steer conversations with law enforcement officers away from their activities to some other subject.

While Verling remained seated in the police cruiser, Worley returned to the vehicle where he checked its identification number and briefly conversed with Klinicki, who had remained seated in the vehicle. Klinicki told Worley that they had stayed at Verling's girl friend's house while they were in Arizona. He also stated that they were driving back rather than flying because Klinicki was "dead set" against flying. When questioned by Worley, Klinicki stated that he did not know if Verling was afraid of flying. Worley returned to his cruiser and spoke again with Verling, who denied knowledge of whether Klinicki had a fear of air travel. Worley took note of the conflicting information received from Verling and Klinicki regarding where they had stayed in Phoenix and why they were driving back to Illinois. Worley and Verling then exited the cruiser, and Worley issued Verling a warning citation for speeding. As Verling began to walk away, Worley asked him if there was anything illegal in the vehicle and received a negative response. Worley then asked if he could search the vehicle, and Verling responded affirmatively. Worley approached the vehicle and asked Klinicki to step out so that he could perform the search, informing Klinicki that Verling had given consent. Klinicki responded that he felt they really needed to get going and then looked at Verling. At that point, Verling stated that he thought they should get going as well.

While Worley was in his cruiser with Verling, Officer Travis Oetter arrived at the scene as backup. As Worley was talking to Klinicki about getting out of the vehicle so he could perform the search, Oetter shined his flashlight into the back cargo area of the vehicle. Worley then heard Oetter say, "I can see it in there." The trial court allowed this statement over Verling's hearsay objection. Based on their prior experience working together, Worley understood that Oetter was referring to illegal drugs.

At this point, Worley retrieved his drug detection dog from his cruiser. The dog was trained to alert to the odor of controlled substances, including marijuana, cocaine, methamphetamine, and heroin, and was certified to perform this function. After circling

the vehicle on Worley's command, the dog alerted at the rear of the vehicle. Worley then opened the rear cargo area of the vehicle and found two large, black duffelbags. Green plastic wrap was visible through the top mesh of one of the bags. Worley opened the bags and found five large bundles of marijuana, which he seized.

Verling was arrested at the scene and subsequently charged with unlawful possession with intent to deliver a controlled substance, a Class III felony. He filed a motion to suppress all evidence obtained as a result of the search of his vehicle on grounds that it was conducted without consent or probable cause. After a hearing at which the above facts were adduced, the district court denied the motion. Following a stipulated bench trial at which Verling preserved the issues raised in his motion to suppress, the district court found him guilty of the charged offense and sentenced him to probation for a term of 4 years. Verling perfected this timely appeal, which we removed to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Verling assigns that the trial court erred in overruling his motion to suppress because (1) there was no concern for officer safety during the traffic stop, (2) there was no need to discover and preserve evidence as the officer issued a warning citation that would not be prosecuted, (3) the search was performed without the necessary probable cause, and (4) the court relied on inadmissible hearsay admitted into evidence over objection.

## STANDARD OF REVIEW

When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to inferences drawn from those facts by the trial judge. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

## ANALYSIS

During the pendency of this appeal, the U.S. Supreme Court decided *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L.

Ed. 2d 842 (2005), a case involving facts similar in many respects to those presented by this appeal. In *Caballes*, an Illinois state trooper stopped the defendant for speeding. When the trooper radioed the dispatcher to report the stop, a second trooper overheard the transmission and proceeded to the scene with a narcotics detection dog. While the arresting officer was in the process of writing a warning ticket, the second trooper walked his dog around the vehicle. The trooper had no basis for doing so other than the dispatch report that he overheard. The dog alerted at the trunk, and a subsequent search resulted in the seizure of marijuana found inside the trunk. The entire incident lasted less than 10 minutes. The defendant was arrested and convicted of a narcotics offense, but the conviction was reversed by the Illinois Supreme Court, which found error in the denial of the defendant's motion to suppress the evidence seized from the vehicle. *People v. Caballes*, 207 Ill. 2d 504, 802 N.E.2d 202, 280 Ill. Dec. 277 (2003). Relying on its prior decision in *People v. Cox*, 202 Ill. 2d 462, 782 N.E.2d 275, 270 Ill. Dec. 81 (2002), the Illinois Supreme Court held that the police "impermissibly broadened the scope of the traffic stop . . . into a drug investigation because there were no specific and articulable facts to support the use of a canine sniff." *People v. Caballes*, 207 Ill. 2d at 509, 802 N.E.2d at 204, 280 Ill. Dec. at 279.

The U.S. Supreme Court granted certiorari on the question of " '[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop.' " *Illinois v. Caballes*, 125 S. Ct. at 837. In answering this question in the negative, the Court first noted that the duration of the stop in *Caballes* was "entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." 125 S. Ct. at 837. It then reasoned that because a dog sniff reveals only the presence of contraband, and no person has a legitimate expectation of privacy in possessing contraband, no intrusion on the driver's privacy expectations occurred. Thus, the Court concluded that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." 125 S. Ct. at 838. The Court distinguished *People v. Cox, supra*, in which a canine

sniff was held impermissible because it occurred "during an unreasonably prolonged traffic stop." *Illinois v. Caballes*, 125 S. Ct. at 837. The Court in *Caballes* noted its assumption that "a similar result would be warranted in this case if the dog sniff had been conducted while respondent was being unlawfully detained." 125 S. Ct. at 837.

As in *Illinois v. Caballes*, the initial stop in this case was lawful because Verling was speeding. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). Moreover, when the dog alerted, the police had probable cause to search the vehicle, especially in light of the other circumstances known to Worley. See, *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983); *U.S. v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994); *State v. Staten*, 233 Neb. 800, 448 N.W.2d 152 (1989). The critical inquiry, therefore, is whether Verling was being lawfully detained at the time of the canine sniff which triggered the events leading to his arrest and conviction.

A law enforcement officer is entitled to conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. See, *State v. Lee, supra*; *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). Such an investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* The officer may also run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants. See, *State v. Lee, supra*; *State v. Anderson, supra*; *State v. Gutierrez*, 9 Neb. App. 325, 611 N.W.2d 853 (2000). The officer may engage in similar routine questioning of passengers in the vehicle to verify information provided by the driver. *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995). See, also, *State v. Gutierrez, supra*. However, in order to expand the scope of a traffic stop and continue to detain the person for additional investigation, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the interference. *State v. Lee, supra*; *State v. Anderson, supra*. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Here, the original purpose of

the traffic stop was completed when Worley issued the warning citation to Verling. See, *State v. Lee, supra*; *State v. Anderson, supra.* Continuing the detention beyond that point was lawful only if Worley had developed a reasonable, articulable suspicion that Verling was involved in illegal activity beyond that which justified the initial stop. See *id.*

▮ Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *State v. Lee,* 265 Neb. 663, 658 N.W.2d 669 (2003); *State v. Anderson, supra.* Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Id.* A finding of reasonable suspicion must be determined on a case-by-case basis. *State v. Lee, supra*; *State v. Mahlin,* 236 Neb. 818, 464 N.W.2d 312 (1991). Even where each factor considered independently is consistent with innocent activities, those same factors may amount to reasonable suspicion when considered collectively. *United States v. Sokolow,* 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989); *State v. Lee, supra.* Determinations of reasonable suspicion are made de novo, but findings of historical fact to support reasonable suspicion are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court. *State v. Lee, supra*; *State v. Kelley,* 265 Neb. 563, 658 N.W.2d 279 (2003).

The information which Worley developed during the traffic stop supported a reasonable suspicion that Verling was transporting illegal drugs. When he initially approached the stopped vehicle, Worley detected a strong citrus odor from within the vehicle, which he knew to be a method used by persons transporting illegal drugs to mask the scent of their cargo. See *U.S. v. Pollington,* 98 F.3d 341 (8th Cir. 1996), and *U.S. v. Bloomfield,* 40 F.3d 910 (8th Cir. 1994) (recognizing distinctive masking odor as factor giving rise to reasonable suspicion of drug transportation). Verling had an Illinois driver's license, but the vehicle had been rented in Arizona. Worley knew from his law enforcement experience that illegal drugs are regularly transported from southwestern states to cities such as Chicago and that rented vehicles are commonly used for this purpose. Thus, when

Verling and Klinicki gave conflicting accounts as to why they were returning to Chicago over land instead of by air, and where they had stayed while in Arizona, it was reasonable for Worley to suspect that they were transporting illegal drugs. See *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995) (determining inconsistent explanations of reason for trip given by driver and passenger justified expansion of inquiry during traffic stop).

▇ Other facts learned during the traffic stop contributed to this suspicion, although to a lesser extent. At the time of the original stop, Worley noticed that Klinicki was feigning sleep despite loud music playing in the vehicle. Worley also noted that Verling seemed increasingly nervous when questioned about the origin and destination of his travel and that he attempted to steer the conversation away from his own activities, a ploy which Worley had previously encountered in dealing with persons involved in criminal activity. Although of limited usefulness, nervousness exhibited by a motorist during a traffic stop may be considered along with other factors in determining whether the officer has reasonable suspicion to expand the scope of the detention. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

Considering the totality of these circumstances, we conclude that Worley had a reasonable, articulable suspicion that Verling was transporting illegal drugs at the time Worley issued the warning citation for speeding. Accordingly, we need not address Verling's contention that the district court erroneously permitted Worley to testify concerning the statement made by Oetter, the backup officer, after the citation was issued but prior to the canine sniff.

▇ After determining that there is reasonable suspicion to support a continued detention, a court must then consider whether the detention was reasonable in the context of an investigative stop. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). We consider both the length of the continued detention and the investigative methods employed therein. See, *U.S. v. Bloomfield, supra*; *State v. Lee, supra*. Here, the canine sniff was initiated 10 to 15 minutes after the initial stop and approximately 1 minute after issuance of the warning citation. The duration of the extended detention was clearly reasonable, and the use of the drug detection dog during the lawful detention did not violate any

constitutionally protected right. See *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

We are not persuaded by Verling's argument that *Knowles v. Iowa*, 525 U.S. 113, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998), requires a different result. In *Knowles*, the U.S. Supreme Court held that issuance of a traffic citation could not serve as the basis for a warrantless search of the vehicle under the search incident to arrest exception because no arrest had occurred. The State does not contend that there was a search incident to arrest in this case, but, rather, that probable cause was established by a canine sniff conducted during a lawfully extended detention following the issuance of a traffic citation. *Knowles* is therefore inapplicable.

## CONCLUSION

In summary, we conclude that the canine sniff which provided probable cause for the vehicle search occurred during a detention which extended beyond the issuance of the traffic citation but was nevertheless lawful because of Worley's reasonable, articulable suspicion that Verling was transporting illegal drugs. Accordingly, the district court did not err in denying Verling's motion to suppress evidence obtained during the search or in receiving such evidence at trial. Finding no error, we affirm.

AFFIRMED.