IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MEYER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAWN MEYER

Filed March 22, 2022.    No. A-21-440.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed.

Lee Timan, of Nelson, Clark & Timan, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Dawn Meyer appeals from her conviction for possession of methamphetamine. She contends that the Gage County District Court erred in overruling her motion to suppress certain evidence, in admitting that evidence over her objections at trial, and in finding that the evidence was sufficient to support her conviction. For the reasons stated herein, we affirm the order of the district court.

## II. STATEMENT OF FACTS

In early April 2020, law enforcement received a call about individuals going through a dumpster on private property in Gage County, Nebraska. Officer Zachary Smith responded to the call and arrived at the scene at approximately 2:39 a.m. Upon arrival, Officer Smith observed two individuals inside a vehicle parked in front of the private residence. Officer Smith pulled up behind the vehicle and approached the driver's side to conduct an investigation of the reported trespass.

Officer Smith questioned the driver and the passenger about whether they had been going through the dumpster on the property. The individuals answered affirmatively, acknowledged that it was private property, and acknowledged they did not have permission to be on that property. Officer Smith informed them that their actions were not permitted and asked to see their identification. The driver provided her identification which identified her as Dawn Meyer. The passenger did not provide his identification, but did provide his name.

Officer Smith was familiar with Meyer, as she had been previously investigated for drug-related conduct. As a result, as Officer Smith returned to his patrol car to complete a data check on Meyer and the passenger, in order to obtain their driving history, warrants, and other information, he simultaneously dispatched for the K-9 unit. While Officer Smith completed the data check in his patrol car, Officer Derek Hosick with the K-9 unit arrived and asked Meyer and the passenger to exit the vehicle. Officer Hosick's drug dog completed a canine sniff of the vehicle. The drug dog indicated by sitting at the rear driver's side door which informed Officer Hosick that the vehicle contained contraband. After completing the data check, Officer Smith again approached the vehicle to complete his trespass investigation. When Officer Smith asked whether the individuals had taken anything from the property, they indicated that they had not. Meyer and the passenger indicated to Officer Smith that they were just driving around and going through the dumpsters that evening. At that time, Officer Hosick informed Officer Smith that the drug dog had indicated during the canine sniff.

Due to the drug dog's indication, Officer Smith conducted a warrantless search of the vehicle during which officers located a marijuana pipe in a yellow container and a purse enclosing a black container which contained 8 grams of methamphetamine, a pipe, and some zig-zag wrappers. After Meyer waived her *Miranda* rights, Officer Smith questioned Meyer about the items located in the vehicle during the search. Meyer admitted that the purse belonged to her, but denied knowledge that the black container held methamphetamine. Meyer stated that she found the container in another dumpster and placed it in her purse. Upon questioning, the passenger denied having knowledge of the methamphetamine or seeing Meyer place a black container in her purse. Meyer was subsequently arrested and charged with possession of methamphetamine. See Neb. Rev. Stat. § 28-416(3)(a) (Cum. Supp. 2020).

Thereafter, Meyer filed a motion to suppress the evidence obtained through the stop and search of her vehicle on the grounds that the search violated the Fourth Amendment. Meyer alleged that there was no evidence of a crime, and if there was, the canine sniff did not amount to probable cause to justify the search of the vehicle.

At the suppression hearing, the State called Officers Smith and Hosick to testify to the events that occurred on the night that Meyer was arrested. The State also offered into evidence, without objection, the footage from both officers' body cameras. Thereafter, the district court overruled Meyer's motion to suppress finding that the community caretaking exception applied and therefore the search of the vehicle was justified.

The case then proceeded to a bench trial on stipulated facts. The State offered into evidence the stipulated facts, the officers' body camera footage, and lab results confirming that the substance located in the purse was methamphetamine. Meyer renewed her objection to the evidence based on her motion to suppress, which was overruled. The district court found Meyer guilty of

possession of methamphetamine and sentenced Meyer to 36 months' probation. Meyer has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Meyer assigns as error, restated and renumbered, that the district court erred in (1) overruling her motion to suppress evidence of the contents of the container obtained pursuant to a warrantless search and overruling her objections to that same evidence at trial and (2) in finding that the evidence was sufficient to support her conviction.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Short, supra.*

When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). But findings of historical fact to support that determination are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court. *Id*.

When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020), *cert. denied ___ U.S. ___*, 141 S. Ct. 415, 208 L. Ed. 2d 119.

The relevant question for an appellate court on review of the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the state, is sufficient to support the conviction. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

The facts in this record demonstrate that pursuant to a neighbor's report to police of a possible trespasser at the next door neighbor's property, Officer Smith responded and approached Meyer and another occupant sitting in a vehicle parked near the site of the reported incident. After making contact with Meyer about the incident, Officer Smith called for, and obtained, a drug

sniffing dog which arrived and indicated to the presence of drugs in the vehicle. This indication by the drug dog ultimately led police to search and discover methamphetamine in Meyer's purse which was located within the vehicle.

Before addressing Meyer's claims, we note that the district court found that the community caretaking exception applied justifying the search of Meyer's vehicle. In *State v. Montoya*, 29 Neb. App. 563, 571, 957 N.W.2d 190, 198 (2021), this court explained:

> An exception to the Fourth Amendment's warrant requirement is the community caretaking exception. *State v. Shiffermiller*, [302 Neb. 245, 922 N.W.2d 763 (2019)]. The community caretaking exception provides that "'"[l]ocal police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."'" [*Id.* at 258, 922 N.W.2d at 775.]

Here, Officer Hosick was investigating the report of individuals going through a dumpster located on private property and there is no evidence that Officer Hosick approached Meyer's car for a community caretaking function, such as an exigency or need to protect or assist an occupant of a vehicle. See *Shiffermiller, supra*. Thus, the community caretaking exception is inapplicable to this case and does not justify the search of Meyer's vehicle.

Having determined that the community caretaking exception is not applicable to this case and did not justify the search of Meyer's vehicle, we proceed to consider Meyer's arguments. Meyer argues that her Fourth Amendment rights were violated because the police had no right to stop and investigate her, no continued right to expand the trespassing investigation into a drug investigation, and no probable cause to search her vehicle. We analyze each of these issues independently.

(a) Initial Stop

Meyer first argues that police had no right to stop and detain her to begin with and that her initial detention was in violation of her Fourth Amendment rights.

The scope of police encounters with citizens was set forth by the Nebraska Supreme Court in *State v. Schriner*, 303 Neb. 476, 486-87, 929 N.W.2d 514, 523-24 (2019):

> There are three tiers of police encounters under Nebraska law. The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection. The second category, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),] is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a "seizure" sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or

detention. The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime. Only the second and third tiers of police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

Meyer argues, and the State does not dispute, that the police conducted a tier-two investigatory stop of Meyer following the reported incident. Meyer simply argues that police lacked specific articulable facts sufficient to give rise to a reasonable suspicion that Meyer had committed a crime and therefore had no right to briefly detain her to begin with. We disagree.

As the Nebraska Supreme Court stated in *State v. Howard*, 282 Neb. 352, 360, 803 N.W.2d 450, 460 (2011):

> Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. Reasonable suspicion must be determined on a case-by-case basis.

Here, law enforcement received and responded to a call about unknown individuals going through a dumpster on private property. Officer Smith arrived on the scene and observed two individuals inside a vehicle parked in front of the residence and near the dumpster where the reported trespass had occurred. After noticing that the dumpster was located in the driveway of the residence, Officer Smith exited his vehicle and approached the vehicle to investigate the reported trespass incident. Based upon the informant's tip, the officer's own observations of the scene including, but not limited to, locating two individuals at 2:39 a.m. parked in a vehicle in front of the residence where the informant alleged a trespass had occurred, and the officer's stated training and experience with such matters, we find that Officer Smith had reasonable suspicion to conduct a brief, non-intrusive detention of Meyer and the passenger for preliminary questioning in connection with the reported incident. See *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992) (holding reliable informant's tip to police concerning criminal activity may furnish basis for reasonable suspicion supporting a *Terry* stop). Meyer's first argument that police had no right to perform a *Terry* stop under these circumstances fails.

(b) Expanded Investigation

Meyer next argues that, even if police had the right to initially stop and detain her to investigate a reported trespass, police had no right to expand that investigation to include a potential drug-related offense and the expanded seizure violated her Fourth Amendment rights.

Meyer's second argument goes to the scope and duration of a *Terry* stop once authorized. She argues

> that Officer Smith's true intentions, after learning of [Meyer's] identity, were to detain [Meyer] at the scene long enough for Officer Hosick to arrive and complete his dog sniff investigation. [Meyer] submits that such actions by Officer Smith were an illegal extension of the duration of the seizure of [Meyer], beyond that which was necessary to investigate whether or not [Meyer] was actually engaged in any criminal wrongdoing.

- 5 -

Brief for appellant at 8-9. We understand Meyer's argument to challenge both the scope and duration of the investigation which started as an investigation of a reported trespass.

As to the scope of the initial trespass investigation, the specific issue challenged by Meyer was addressed by the Nebraska Supreme Court in *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018). In distinguishing the U.S. Supreme Court's decisions in *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), and *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct 834, 160 L. Ed. 2d 842 (2005), the Nebraska Supreme Court held:

> The U.S. Supreme Court has explained that the Fourth Amendment tolerates certain investigations unrelated to the traffic stop, so long as those investigations do not lengthen the roadside detention. Before *Rodriguez*, in *Illinois v. Caballes*, the U.S. Supreme Court held that a dog sniff unsupported by reasonable suspicion or probable cause was nevertheless reasonable when conducted while the driver was lawfully seized during a traffic stop and where the duration of the stop was justified by the traffic offense and the ordinary inquiries incident thereto.

> The Court in *Caballes* held that the dog sniff, conducted around the exterior of a vehicle without physically intruding into a constitutionally protected area or prolonging the seizure, did not change the lawful character of the traffic stop. This was because a dog sniff, in itself, does not infringe upon the driver's constitutionally protected interest in privacy. A "search" under the Fourth Amendment occurs if either (1) the defendant's legitimate expectation of privacy is infringed or (2) the government physically intrudes on a protected area. A reasonable expectation of privacy is an expectation that has a source outside of the Fourth Amendment, by reference either to concepts of real or personal property law or to understandings that are recognized and permitted by society. The Court in *Caballes* explained that drug detection dog sniffs in themselves do not infringe upon a constitutionally protected privacy interest, because they are designed to reveal no information other than the possession of contraband and its location. And society, the Court explained, is not prepared to consider as either reasonable or legitimate any subjective expectation that possession of contraband will not come to the attention of the authorities.

> Subsequently, in *Rodriguez*, the U.S. Supreme Court addressed the seizure of the driver and the vehicle in order to conduct a dog sniff after the traffic stop had been completed. The U.S. Supreme Court reiterated that the tolerable duration of a traffic stop is that which is reasonably necessary to address the mission of the stop and the ordinary inquiries incident thereto, and it clarified that a drug detection dog sniff is not an ordinary incident of a traffic stop. Since it was undisputed in *Rodriguez* that the delay for purposes of conducting the dog sniff occurred beyond the time reasonably necessary to complete the tasks tied to the traffic infraction that justified the stop, the Court vacated the circuit court's judgment, which had held that the prolonged seizure was an acceptable de minimis intrusion. The Court noted, however, that it remained open for the circuit court on remand to determine whether reasonable suspicion of criminal activity justified detaining the driver beyond completion of the traffic infraction investigation.

> Read together, *Caballes* and *Rodriguez* instruct that the fact that a dog sniff is conducted after the time reasonably required to complete the initial mission of a traffic stop is not, in and of itself, a Fourth Amendment violation. A Fourth Amendment violation

arises only when the dog sniff is conducted after the initial mission of a stop is completed and the officer lacks probable cause or reasonable suspicion to investigate further. Where, on the other hand, the officer has probable cause or reasonable suspicion to continue the detention after the initial mission of the stop is completed, the officer may conduct a drug detection dog sniff while the suspect is properly detained. We accordingly held in *State v. Verling*[, 269 Neb. 610, 694 N.W.2d 632 (2005),] and *State v. Rogers*[, 297 Neb. 265, 899 N.W.2d 626 (2017),] that seizures that took place in order to facilitate dog sniffs after the completion of traffic infraction investigations did not violate the Fourth Amendment when the officers had reasonable suspicion of criminal activity, developed during the ordinary inquiries incident to the stops.

*State v. Ferguson*, 301 Neb. 697, 711-13, 919 N.W.2d 863, 877-78 (2018).

We are confronted with a similar issue here. Officer Smith's expansion of his trespass investigation to include investigating Meyer's possible drug-related activity did not, in and of itself, constitute a Fourth Amendment violation. Instead, the issue becomes whether the additional drug-related investigative techniques took place while Meyer was lawfully seized during the initial stop and conducted within the parameters and duration of that stop, or whether those techniques (in this case additional questioning and calling for a canine sniff) prolonged her detention. If the former, *Illinois v. Caballes*, 543 U.S. 405, 124 S. Ct. 834, 160 L. Ed. 2d 842 (2005), indicates that no Fourth Amendment violation occurred. If the latter, *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), indicates that Officer Smith would have needed probable cause or reasonable suspicion of potential drug-related activity discovered during his trespass investigation in order to extend the duration of the stop. Meyer argues the events that night constituted the latter. We disagree.

Officer Smith responded to an informant's tip that individuals were trespassing on the informant's neighbor's property and rummaging through his neighbor's dumpster located thereon. Upon arriving at 2:39 a.m., Officer Smith approached a vehicle parked just outside that property and we have already held that Officer Smith had reasonable suspicion to briefly detain Meyer in order to perform an investigation in accordance with the parameters of a tier-two encounter. As it relates to the duration of that investigation, an officer is permitted during the course of an investigation to conduct ordinary inquiries incident to the stop. *State v. Ferguson, supra*. An investigative stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

During Officer Smith's initial questioning of Meyer and the passenger, they admitted to going through the dumpster on the property, confirming what had been reported to Smith, and admitted they did not have permission to be on the property. At that time, Officer Smith recognized Meyer as a person previously involved in prior drug-related investigations, obtained Meyer's identification to complete a data check on her, and returned to his cruiser to do so. While walking back to his cruiser to perform the data check, Officer Smith called Officer Hosick, who was close by and arrived within minutes of the call, so that Officer Hosick's drug dog could conduct a canine sniff of Meyer's car. By the time Officer Smith returned to the vehicle with information he received from his data check, the canine sniff had been completed. While Officer Smith completed his questioning of Meyer and the passenger, Officer Hosick informed Officer Smith that his dog had

indicated to the presence of drugs in the vehicle. This all occurred before Officer Smith completed the follow-up questioning of Meyer and her passenger regarding his trespass investigation. Officer Smith indicated that the entire process occurred within a matter of 7 or 8 minutes. In short, we find that the facts on this record are similar to those in *Illinois v. Caballes, supra*. Because we find that the canine sniff and indication took place during the course of the trespass investigation and did not prolong it, we reject Meyer's argument that the scope and duration of the search utilizing a drug dog violated her Fourth Amendment rights.

(c) Probable Cause for Search of Vehicle

Meyer next asserts that even if Officer Smith had reasonable suspicion to justify the investigatory stop and canine sniff of the vehicle, Officer Smith did not have probable cause to complete a search of the vehicle following the dog sniff.

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Lang,* 305 Neb. 726, 942 N.W.2d 388 (2020). Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Id*.

Among the established exceptions to the warrant requirement is the automobile exception. *Id*. This exception applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle. *Id*. Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Id.*

Probable cause is a flexible, commonsense standard. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). It merely requires that the facts available to the officer would warrant a person of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. *Id*. An appellate court determines probable cause by an objective standard of reasonableness, given the known facts and circumstances. *Id*.

Generally, the factors supporting an officer's reasonable suspicion of illegal drug activity, coupled with a well-trained drug detection dog's positive indication of drugs in a vehicle, give the officer probable cause to search the vehicle. *Id*. Some courts allow a defendant in at least some circumstances to introduce evidence of a drug detection dog's search records and consider those records in the totality of the circumstances when determining whether a canine alert, combined with reasonable suspicion factors, amounts to probable cause to search a vehicle. *Id.*

Here, Officer Smith first approached the vehicle to complete an investigatory stop. After identifying Meyer as the driver, Officer Smith recalled that Meyer had "some drug history." While he completed a data check to check history, warrants, and other data, a canine sniff was conducted on the exterior of the vehicle. During the canine sniff, the dog indicated that contraband was contained inside the vehicle. Following the canine's indication, Officer Smith completed a search of the vehicle during which he located drug paraphernalia in the vehicle and methamphetamine inside a black container in Meyer's purse. These facts establish that during Officer Smith's 7 to 8 minute investigatory stop, he became aware of additional facts including his knowledge of Meyer's prior drug-related history and the drug dog's indication during the canine sniff of the presence of narcotics inside of the vehicle. These facts establish probable cause that contraband would be

located inside the vehicle. See *State v. Howard, supra*. As a result, Officer Smith was permitted to search the vehicle and containers located inside the vehicle under the automobile exception. See *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020).

Because Officer Smith had probable cause to complete the search of the automobile, this assignment fails. Although the district court overruled Meyer's motion to suppress on different grounds, we find that the district court did not err in finding that Meyer's Fourth Amendment rights were not violated here as discussed above, and we hold that the district court did not err in overruling Meyer's motion to suppress and subsequent objections at trial to that same evidence. See *Doe v. Board of Regents*, 283 Neb. 303, 809 N.W.2d 263 (2012) (appellate court will affirm lower court's ruling that reaches correct result, although based on different reasoning).

## 2. SUFFICIENCY OF EVIDENCE

Meyer next asserts that the district court erred in finding that the evidence was sufficient to support her conviction for possession of methamphetamine. She argues that the evidence does not support that she had knowledge that methamphetamine was contained inside the container that was located in her purse.

Pursuant to § 28-416(3), it is unlawful to knowingly or intentionally possess a controlled substance. Methamphetamine is a controlled substance. Neb. Rev. Stat. § 28-405(c)(3) (Cum. Supp. 2020).

In the context of a criminal statute, intentionally means willfully or purposely, and not accidentally or involuntarily. *State v. Thompson*, 30 Neb. App. 135, 966 N.W.2d 872 (2021). Knowingly means willfully as distinguished from accidentally or involuntarily. *Id*. In other words, to commit an act knowingly, a defendant must be aware of what he or she is doing. *Id*. A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *Id*.

In this case, the evidence viewed in the light most favorable to the State established that during a lawful automobile search, methamphetamine was found inside a black container located inside Meyer's purse. Although Meyer claimed that she randomly pulled the black container out of a different dumpster, did not look inside of it, and immediately placed it in her purse without any knowledge of what was inside of it, the district court determined that Meyer's claim that she did not know that the black container held methamphetamine was not credible. This court does not reweigh the evidence or challenge the court's credibility determinations. See *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Accordingly, the evidence was sufficient to support Meyer's conviction of intentional or knowing possession of methamphetamine. See *State v. Thompson, supra* (finding evidence sufficient to sustain conviction for possession of methamphetamine where appellant indicated she had picked baggie out of trash, denied ownership, and provided conflicting explanations of how baggie containing methamphetamine was on her person). Because the evidence is sufficient to support Meyer's conviction for possession of methamphetamine, this assignment of error fails.

## VI. CONCLUSION

For the above stated reasons, we affirm Meyer's conviction and sentence.

AFFIRMED.