Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/30/2018 08:10 AM CST

State of Nebraska, appellee, v.
Travis L. Ferguson, appellant.
___ N.W.2d ___

Filed November 30, 2018.    No. S-17-1197.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

3. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion.

4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

6. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

7. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

8. **Constitutional Law: Search and Seizure.** The ultimate touchstone of the Fourth Amendment is reasonableness.

9. \_\_\_\_: \_\_\_\_. Reasonableness is determined by balancing the intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests.

10. \_\_\_\_: \_\_\_\_. A seizure that is lawful at its inception can violate the Fourth Amendment by its manner of execution.

11. \_\_\_\_: \_\_\_\_. A "search" under the Fourth Amendment occurs if either (1) the defendant's legitimate expectation of privacy is infringed or (2) the government physically intrudes on a protected area.

12. **Constitutional Law: Search and Seizure: Words and Phrases.** A reasonable expectation of privacy is an expectation that has a source outside of the Fourth Amendment, by reference either to concepts of real or personal property law or to understandings that are recognized and permitted by society.

13. **Constitutional Law: Search and Seizure: Animals.** Drug detection dog sniffs in themselves do not infringe upon a constitutionally protected privacy interest, because they are designed to reveal no information other than the possession of contraband and its location, and society is not prepared to consider as either reasonable or legitimate any subjective expectation that possession of contraband will not come to the attention of the authorities.

14. **Investigative Stops: Motor Vehicles: Animals: Time.** The tolerable duration of a traffic stop is that which is reasonably necessary to address the mission of the stop and the ordinary inquiries incident thereto, and a drug detection dog sniff is not an ordinary incident of a traffic stop.

15. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Animals: Probable Cause.** Where a law enforcement officer has probable cause or reasonable suspicion to continue the detention after the initial mission of the stop is completed, the officer may conduct a drug detection dog sniff while the suspect is properly detained.

16. **Arrests: Probable Cause: Time: Proof.** Judicial probable cause determinations must be made promptly after a warrantless arrest, and unreasonable delays in such judicial determinations of probable cause include delays for the purpose of gathering additional evidence to justify the arrest. However, the arrested individual bears the burden of proving the

delay was unreasonable when the probable cause determination occurs within 48 hours.

17. **Rules of Evidence: Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.

18. **Rules of Evidence: Hearsay: Testimony: Records: Proof.** Testimony as to the content of records, entered into evidence to prove the truth of the information contained therein, is hearsay.

19. **Rules of Evidence: Rules of the Supreme Court: Hearsay.** Hearsay is not admissible except as provided by the rules of evidence or by other rules adopted by the statutes of the State of Nebraska or by the discovery rules of the Nebraska Supreme Court.

20. **Hearsay: Proof.** The proponent of the hearsay evidence has the burden of identifying the appropriate exception and demonstrating that the testimony falls within it.

21. **Trial: Hearsay: Evidence: Appeal and Error.** When the opposing party objects to evidence as hearsay and the trial court sustains the objection, the proponent is required to point out the possible hearsay exceptions in order to preserve the point for appeal.

22. **Trial: Evidence: Witnesses.** There is sufficient foundation to render communications by telephone admissible in evidence where the identity of the person with whom the witness spoke or the person whom he or she heard speak is satisfactorily established.

23. ____: ____: ____. A witness testifying positively that he or she recognized, by voice, the person with whom he or she was talking, is generally sufficient to present the evidence to the jury to determine whether the conversation actually occurred.

24. **Criminal Law: Juries: Verdicts: Presumptions.** Jurors in a criminal case are presumed well equipped to analyze the evidence in order to avoid resting a guilty verdict on a factually inadequate theory.

25. **Juries: Verdicts: Appeal and Error.** If there are two possible factual grounds for the jury's general verdict, one factually inadequate and unreasonable and the other factually adequate and reasonable, an appellate court will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable and factually adequate ground.

Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Affirmed.

Candice C. Wooster, of Brennan & Nielsen Law Offices, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## I. NATURE OF CASE

The defendant appeals his convictions for possession of a controlled substance and child abuse. The defendant was driving a vehicle owned by the defendant's girlfriend when he was stopped by law enforcement to investigate a citizen report of dangerous driving. The stop occurred at a gas station. The defendant's two young children were in the back seat of the vehicle. Methamphetamine was found during a search of the vehicle, which was conducted subsequent to a drug detection dog sniff. The dog sniff took place approximately 30 minutes after law enforcement had completed their routine investigation related to the stop and had discovered that the defendant was driving with a suspended license, had given them false information, and had an outstanding civil contempt warrant for his arrest. The principle issue presented is whether continuing the defendant's detention at the gas station beyond the time reasonably necessary to complete the traffic stop's mission of investigating the report of dangerous driving constituted an unreasonable seizure when the detention occurred after law enforcement had probable cause to arrest the defendant.

## II. BACKGROUND

Travis L. Ferguson was charged with one count of possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Supp. 2015); one count of false reporting in violation of Neb. Rev. Stat. § 28-907(1) (Reissue 2016); and one count of child abuse in violation of Neb. Rev. Stat. § 28-707(1) and (3) (Reissue 2016)—specifically, that Ferguson, acting negligently, had placed his minor children, ages 8 and 6 at the time of the stop, in a situation that endangered their lives or

physical or mental health, or deprived them of necessary food, clothing, shelter, or care. The charges stem from the events of March 9, 2016. Ferguson was driving his girlfriend's 1998 four-door silver Honda Accord sedan with his children in the back seat. He was stopped by law enforcement after another driver called the 911 emergency dispatch service to report dangerous driving, and methamphetamine was eventually found inside the vehicle.

### 1. Motion to Suppress

Before trial, Ferguson moved to suppress any and all evidence and statements obtained by law enforcement on March 9, 2016, for the reason that they were allegedly obtained in violation of Ferguson's constitutional rights under the 4th, 5th, 6th, and 14th Amendments to the U.S. Constitution and the respective guarantees of the Constitution of the State of Nebraska. The following evidence was adduced at the hearing on the motion.

### (a) Traffic Stop

Around 5 p.m. on March 9, 2016, Bradley Kinzie called 911 to report a vehicle swerving on Highway 77. The vehicle was described as a gray, four-door sedan moving northbound from Roca Road in Lancaster County, Nebraska. Kinzie also reported the vehicle's license plate number.

Deputy Sheriff Jeremy Schwarz was in his cruiser headed southbound on Highway 77 in the same general vicinity when he received the report of the 911 call. One or two minutes later, Schwarz saw a man in a vehicle headed northbound on Highway 77 behind a white, four-door sedan using hand gestures to emphatically direct Schwarz' attention to the sedan. Schwarz understood, and it was later confirmed, that the man gesturing was the 911 caller and the sedan was the vehicle reported.

Schwarz made a U-turn to pursue the vehicle. The vehicle pulled into a gas station before he could catch up with it. Schwarz pulled up behind the vehicle. Schwarz confirmed

that the license plate number was only one digit off from the number reported during the 911 call. Schwarz activated the cruiser's overhead lights.

At 5:05 p.m., Schwarz exited the cruiser and approached the driver of the vehicle, who was later identified as Ferguson. Schwarz observed two children in the back seat. Ferguson informed Schwarz that he did not have his driver's license with him. Ferguson acknowledged that he was tired and had been swerving the vehicle.

Ferguson originally identified himself using his brother's name. In the databases accessed through the mobile data terminal of his cruiser, Schwarz could not find a person with that name who matched the other information given by Ferguson.

At 5:16 p.m., Ferguson was asked to sit in the cruiser while Schwarz further investigated Ferguson's identity. During the pat-down search conducted before entering the cruiser, Schwarz found Ferguson's electronic benefit transfer card which included his real name. By 5:22 p.m., Schwarz was able to confirm Ferguson's identity through the databases, which revealed that Ferguson had a suspended driver's license and an outstanding warrant for civil contempt related to unpaid child support. At approximately that same time, Schwarz learned the identity of the children's mother.

(b) Probable Cause

Schwarz described that he had probable cause to arrest Ferguson both for driving with a suspended license and on the child support warrant.

Ferguson's criminal history also caused Schwarz to suspect that there might be narcotics in the sedan. Ferguson denied consent to search the vehicle.

Schwarz did not transport Ferguson immediately to the police station, because he was trying to make arrangements for the children to be picked up by their mother and for Lindsey Koch, the owner of the vehicle, to pick it up. Schwarz contacted the children's mother, who agreed to pick up the

children, but she lived 30 to 45 minutes away. Two offi-
cers who had arrived at the scene took the children out of
the vehicle and into the convenience store for snacks while
they waited.

### (c) Dog Sniff and
### Subsequent Search

At 5:25 p.m., approximately the same time that Schwarz
contacted the children's mother, he decided to call in a canine
unit to conduct a dog sniff of the vehicle. Schwarz asked
Koch for her consent to the search, explaining that the canine
unit was on its way, but she refused. Koch agreed to pick
up her vehicle at the gas station. The canine unit arrived
approximately 30 minutes after Schwarz called it in. When the
canine unit arrived, neither Koch nor the children's mother had
yet arrived.

The dog sniff was conducted around the exterior of the
sedan, and the dog alerted to the odor of narcotics. After that,
the officers searched the sedan and found a plastic bag of what
appeared to be methamphetamine on the driver's side floor-
board between the center console and the driver's seat. At trial,
the parties stipulated that the bag found in the sedan contained
approximately 1.6 grams of methamphetamine.

Approximately 15 minutes after the search of the sedan had
been completed, Koch arrived and removed the vehicle from
the premises. Five minutes later, the children's mother arrived
and the children were turned over to her. Ferguson was then
taken to jail.

### (d) Court's Ruling

In support of the motion to suppress, defense counsel argued
that prolonging the stop while waiting for Koch and the canine
unit to arrive was unreasonable, because the officers were no
longer handling the matter for which the stop was initially
made. Defense counsel also argued that the search was not
incident to arrest. Without addressing Ferguson's suspended
license, defense counsel argued that if Ferguson would have

been taken to jail sooner, he could have purged himself sooner of the civil contempt warrant. Defense counsel explained that the delay at the gas station unreasonably denied Ferguson the "opportunity to go and bond himself out or purge himself of that warrant." The State responded that the continued detention was a "non-issue," because at that point, there was probable cause for Ferguson's arrest.

The court denied the motion to suppress. The court granted defense counsel's request for a continuing objection to evidence of the methamphetamine found in the sedan, and the case proceeded to trial.

## 2. Evidence Presented at Trial

### (a) Kinzie's Testimony

At trial, Kinzie testified that while driving along Highway 77 on March 9, 2016, he spotted in his rearview mirror a gray, four-door Toyota or Mazda sedan behind him. He saw the sedan going from one side of the road to the other. He slowed down, and the sedan passed him. While passing him, the sedan encroached into Kinzie's lane so much that he had to drive on the curb in order to avoid a collision.

Kinzie watched as the sedan, driving at that point in front of him, veered past the white line of the right-hand lane and back into the left-hand lane. The sedan then proceeded to encroach into the right-hand lane again, even though there was another vehicle in its path. The sedan pushed that vehicle off the road and into a ditch.

After ensuring that the people in the vehicle that went off the road were "okay," Kinzie called 911. Kinzie described seeing a police cruiser soon thereafter and pointing out the sedan to the law enforcement officer. While stopped at a red light, Kinzie witnessed the cruiser follow the sedan to a nearby gas station and park behind it.

The speed limit in that area of Highway 77 was 65 miles per hour. It was rush-hour traffic. Kinzie testified that both he and the driver of the other vehicle were forced to take evasive

action to avoid colliding with the sedan, stating, "At least nobody was killed. That's the main thing."

### (b) Schwarz' Testimony and
### Motion in Limine

At trial, Schwarz reiterated much of his testimony given at the hearing on the motion to suppress. Schwarz also described that when he approached the sedan, the children in the back seat were moving around and not completely buckled in. Schwarz testified that the children had access to the area by the floorboards where the methamphetamine was found and that they were apparently in the sedan alone for a brief period of time after Schwarz directed Ferguson into his cruiser for further investigation as to his identity.

Schwarz testified that he had received extensive training in narcotics. According to Schwarz, methamphetamine is very toxic and can be lethal to children if they accidentally ingest it. He opined that a child who is within reach of methamphetamine is placed in a situation that endangers the child's life.

During a recess, the State moved in limine to prohibit any questioning or evidence concerning pending charges against Koch originating from an arrest in April 2017, as well as any other drug history associated with Koch or her sedan after the March 9, 2016, arrest of Ferguson. Defense counsel responded that it was part of the theory of Ferguson's defense to demonstrate that the methamphetamine might have belonged to Koch or someone else she lent her vehicle to. The court expressed concern that any questioning of Schwarz as to the criminal record associated with Koch or the sedan would be outside of Schwarz' personal knowledge. The court sustained the motion at that point in time, explaining that if defense counsel wanted to "get into anything like that," she was going to have to first demonstrate to the court outside the presence of the jury that it was admissible.

Subsequently, defense counsel questioned Schwarz outside the presence of the jury as a proffer of "what he knows about

the vehicle." Schwarz testified that during the stop, he had run the license plate of the vehicle through the databases he had access to. That information, he explained, would be found in his report, but he recalled a prior arrest of Koch for possession of methamphetamine. He could not specifically recall anything else. During cross-examination for the proffer, Schwarz affirmed that his report described other prior arrests for possession of a controlled substance in relation to the vehicle.

At the close of the proffer, the State objected on the grounds of hearsay, relevance, unfair prejudice, and improper use of character evidence for impeachment. The State explained that the prior criminal history of Koch or her vehicle was not relevant to the events of March 9, 2016, and that it would improperly suggest that, because she had possessed methamphetamine in the past, Koch was not telling the truth about the methamphetamine found on March 9 when she stated it did not belong to her. Defense counsel did not suggest that the proffered statement fell under an exception to the hearsay rule. The court sustained the objection on the ground of hearsay, and did not specifically address the other grounds presented.

### (c) Children's Mother's Testimony
### and Foundation Objection

The children's mother testified without objection that the older child reported that Ferguson had been falling asleep at the wheel that day.

The children's mother testified further that she and Ferguson had a telephone conversation about his arrest a week or so after Ferguson was released from jail, which she said was in April 2016. She described that she was at home. No one else was around at the time, and she did not know where Ferguson was calling from. She confirmed that, as a result of having previously dated Ferguson for 8 years, she had talked to him on the telephone previously and knew the sound of his voice.

Defense counsel objected on foundation grounds to any further testimony about the telephone conversation. Defense counsel explained that the State had failed to present evidence as to both parties' locations or precise information about when it took place. The court overruled the objection.

The children's mother proceeded to testify that during the conversation, Ferguson apologized for his actions that had caused the Department of Health and Human Services to make inquiries into the children's welfare. Ferguson explained that he thought he had left the methamphetamine at home.

### (d) Koch's Testimony

Koch testified that after she had agreed to lend Ferguson her car in order for him to be able to go see his children, she spent about an hour cleaning it. She testified that her car was normally very messy and that she wanted to make sure there was room for the children and there was nothing "dangerous" in the car. She denied placing any methamphetamine in the car on March 9, 2016, and she denied that the methamphetamine found in the car on that date was hers. Koch admitted that during that general period of time, it was not unusual for her to allow others to borrow her car, but clarified that no one had borrowed her car from the time she cleaned it until the time that Ferguson drove it to go see his children on March 9.

### (e) Ferguson's Testimony

Ferguson testified in his own defense. He generally denied the allegations against him, except that he admitted he lied to Schwarz when he identified himself as his brother rather than as himself. He admitted to swerving his vehicle, because he was tired, and he explained that he had been helping one of his children with her seatbelt. He denied having any knowledge that there were drugs in the vehicle. He conceded that children can get hurt when they are within reach of methamphetamine.

### 3. Verdict

The jury found Ferguson guilty of all three charges.

## 4. Sentences

The court sentenced Ferguson to 365 days of imprisonment and 12 months of postrelease supervision on count 1. The court sentenced Ferguson to 90 days of imprisonment on count 2, to be served consecutively to count 1. On count 3, the court sentenced Ferguson to 30 days of imprisonment, to be served concurrently to counts 1 and 2.

The court explained that it was not placing Ferguson on probation because he did not appear to be capable of completing probation successfully. The court explained that Ferguson was being sentenced to jail time, not to prison, and that if he were given probation instead, he would likely engage in criminal conduct in violation of the terms of his probation and face a prison sentence. The court noted Ferguson's history during the proceedings of not showing up to court and not going to his probation evaluation on time. The court further noted that Ferguson was convicted of other crimes committed while awaiting trial. The record contains a bench warrant for Ferguson's failure to appear. Ferguson agreed that he would likely fail probation.

Ferguson appeals his convictions for child abuse and possession of a controlled substance and his sentences.

## III. ASSIGNMENTS OF ERROR

Ferguson assigns that the district court erred by (1) overruling his motion to suppress, (2) refusing to admit evidence that the vehicle he was driving had previously been involved in drug convictions, (3) admitting evidence of a telephone conversation between Ferguson and the children's mother, (4) finding the evidence sufficient to support the child abuse conviction, and (5) imposing excessive sentences.

## IV. STANDARD OF REVIEW

[1] When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of

review.[1] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[2]

[2] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.[3]

[3] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion.[4]

[4] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[5] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

[5] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[7]

---

[1] *State v. Barbeau, ante* p. 293, 917 N.W.2d 913 (2018).

[2] *Id.*

[3] *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

[4] *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017).

[5] *State v. McCurdy, ante* p. 343, 918 N.W.2d 292 (2018).

[6] *Id.*

[7] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

## V. ANALYSIS

On appeal, Ferguson challenges the denial of his motion to suppress, which sought to prevent the jury from considering the methamphetamine found in Koch's vehicle. He also asserts that the district court erred in sustaining the State's hearsay objection to the proposed testimony of Schwarz regarding his recollection of the criminal records associated with Koch's vehicle. He asserts, further, that the court should not have allowed into evidence over Ferguson's foundation objection statements made by Ferguson during a telephone conversation. Lastly, Ferguson argues that there was insufficient evidence to support the conviction for child abuse and that his sentences to jail time rather than probation were excessive.

### 1. Motion to Suppress

We first address the motion to suppress, which alleged that the discovery of the methamphetamine in the vehicle Ferguson was driving was the product of an illegal search and seizure. Ferguson does not contest that Schwarz had reasonable suspicion for conducting the traffic stop, that Schwarz had probable cause to arrest Ferguson by the time the dog sniff of the vehicle occurred, or that the officers had probable cause to search inside the vehicle once the dog alerted to the presence of illegal substances inside. In arguing that there was an unreasonable seizure of Ferguson's person and an unreasonable search of the vehicle, Ferguson instead focuses on the length and place of his detention and the fact that the search and seizure occurred after Schwarz had completed all inquiries incident to the citizen report of dangerous driving.

[6-10] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[8] Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state

---

[8] *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

prosecution and must be excluded.[9] The ultimate touchstone of the Fourth Amendment is reasonableness.[10] Reasonableness is determined by balancing the intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests.[11] A seizure that is lawful at its inception can violate the Fourth Amendment by its manner of execution.[12]

In asserting that his seizure, lawful at its inception, was unreasonable, Ferguson relies chiefly upon the holding of the U.S. Supreme Court in *Rodriguez v. U.S.*[13] that a seizure justified by a legitimate traffic stop becomes unlawful if prolonged beyond the time reasonably required to complete the mission of the stop.[14] Ferguson has taken this proposition out of context.

The U.S. Supreme Court has explained that the Fourth Amendment tolerates certain investigations unrelated to the traffic stop, so long as those investigations do not lengthen the roadside detention.[15] Before *Rodriguez*, in *Illinois v. Caballes*,[16] the U.S. Supreme Court held that a dog sniff unsupported by reasonable suspicion or probable cause was nevertheless reasonable when conducted while the driver was lawfully seized during a traffic stop and where the duration of the stop was

---

[9] *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

[10] *Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006).

[11] *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990).

[12] See *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

[13] *Rodriguez v. U.S.*, ___ U.S. ___, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). See, also, *State v. Barbeau, supra* note 1.

[14] See, *Rodriguez v. U.S., supra* note 13; *Illinois v. Caballes, supra* note 12.

[15] *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). See, also, e.g., *Illinois v. Caballes, supra* note 12.

[16] *Illinois v. Caballes, supra* note 12.

justified by the traffic offense and the ordinary inquiries incident thereto.

[11-13] The Court in *Caballes* held that the dog sniff, conducted around the exterior of a vehicle without physically intruding into a constitutionally protected area[17] or prolonging the seizure, did not change the lawful character of the traffic stop.[18] This was because a dog sniff, in itself, does not infringe upon the driver's constitutionally protected interest in privacy.[19] A "search" under the Fourth Amendment occurs if either (1) the defendant's legitimate expectation of privacy is infringed or (2) the government physically intrudes on a protected area.[20] A reasonable expectation of privacy is an expectation that has a source outside of the Fourth Amendment, by reference either to concepts of real or personal property law or to understandings that are recognized and permitted by society.[21] The Court in *Caballes* explained that drug detection dog sniffs in themselves do not infringe upon a constitutionally protected privacy interest, because they are designed to reveal no information other than the possession of contraband and its location.[22] And society, the Court explained, is not prepared to consider as either reasonable or legitimate any subjective expectation that possession of contraband will not come to the attention of the authorities.[23]

[14] Subsequently, in *Rodriguez*, the U.S. Supreme Court addressed the seizure of the driver and the vehicle in order to conduct a dog sniff after the traffic stop had been completed.[24]

---

[17] Compare *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).

[18] See *Illinois v. Caballes, supra* note 12.

[19] See *id.*

[20] *City of Beatrice v. Meints*, 289 Neb. 558, 856 N.W.2d 410 (2014).

[21] *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[22] *Illinois v. Caballes, supra* note 12.

[23] *Id.*

[24] *Rodriguez v. U.S., supra* note 13. See, also, *State v. Barbeau, supra* note 1.

The U.S. Supreme Court reiterated that the tolerable duration of a traffic stop is that which is reasonably necessary to address the mission of the stop and the ordinary inquiries incident thereto, and it clarified that a drug detection dog sniff is not an ordinary incident of a traffic stop.[25] Since it was undisputed in *Rodriguez* that the delay for purposes of conducting the dog sniff occurred beyond the time reasonably necessary to complete the tasks tied to the traffic infraction that justified the stop, the Court vacated the circuit court's judgment, which had held that the prolonged seizure was an acceptable de minimis intrusion. The Court noted, however, that it remained open for the circuit court on remand to determine whether reasonable suspicion of criminal activity justified detaining the driver beyond completion of the traffic infraction investigation.

[15] Read together, *Caballes* and *Rodriguez* instruct that the fact that a dog sniff is conducted after the time reasonably required to complete the initial mission of a traffic stop is not, in and of itself, a Fourth Amendment violation. A Fourth Amendment violation arises only when the dog sniff is conducted after the initial mission of a stop is completed and the officer lacks probable cause or reasonable suspicion to investigate further. Where, on the other hand, the officer has probable cause or reasonable suspicion to continue the detention after the initial mission of the stop is completed, the officer may conduct a drug detection dog sniff while the suspect is properly detained. We accordingly held in *State v. Verling*[26] and *State v. Rogers*[27] that seizures that took place in order to facilitate dog sniffs after the completion of traffic infraction investigations did not violate the Fourth Amendment when the officers had reasonable suspicion of criminal activity, developed during the ordinary inquiries incident to the stops.

---

[25] See *id.*

[26] *State v. Verling*, 269 Neb. 610, 694 N.W.2d 632 (2005).

[27] *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

Like in *Verling* and *Rogers*, Ferguson's detention at the time of the dog sniff was independently justified. It was no longer the temporary detention associated with an investigatory stop, but was a tier-three encounter that necessarily entails a prolonged detention.[28] That prolonged detention was supported by probable cause for the officers to believe, based on information lawfully obtained during the stop, that Ferguson had committed the law violations of driving with a suspended license and giving false information to a police officer. Additionally, the prolonged detention was supported by a contempt warrant for Ferguson's arrest. We find no merit to Ferguson's argument that the dog sniff was unlawful because it occurred past the time necessary to investigate the reported traffic violation.

Ferguson also argues that the prolonged seizure was conducted in an unlawful manner because of the place where he was being detained. He suggests that rather than being detained at the gas station, "Ferguson should have immediately been taken to the jail to begin the booking process and to allow Ferguson the opportunity to attempt to get his child support payments up to date."[29] He argues that he was unreasonably detained at the gas station in order to facilitate the dog sniff.

[16] The U.S. Supreme Court has held that judicial probable cause determinations must be made promptly after a warrantless arrest and, further, that unreasonable delays in such judicial determinations of probable cause include delays for the purpose of gathering additional evidence to justify the arrest.[30] However, the Court has also held in this context that the arrested individual bears the burden of proving the delay was unreasonable when the probable cause determination occurs

---

[28] See *State v. Petsch*, 300 Neb. 401, 914 N.W.2d 448 (2018).

[29] Brief for appellant at 13.

[30] *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991).

within 48 hours.[31] Ferguson was arrested under a civil warrant issued by a judge and, regardless, he made no attempt to prove that a judicial probable cause determination was unreasonably delayed by virtue of being held at the gas station for an additional 30 minutes.

Moreover, we fail to comprehend how any delay in reaching the jail was causally connected to the dog sniff of Koch's vehicle and the resulting discovery of the methamphetamine. In other words, his detention at the gas station was not for the purpose of gathering additional evidence to justify the arrest and, further, there is no evidence that the methamphetamine was derivative[32] of Ferguson's detention at the gas station rather than at the jail. Regardless of where Ferguson was detained, the vehicle would have been parked in a place of public access until Koch arrived, which was after the dog sniff. Ferguson does not assert that he could have reached the jail, been released, and returned to the vehicle before Koch arrived.

Finally, Ferguson suggests that the dog sniff was an unreasonable "search" of the vehicle, because it was "merely parked at a gas station waiting for the owner . . . to arrive."[33] It is not clear that Ferguson had "standing" to claim a possessory or privacy interest in the borrowed vehicle once he entered into a tier-three encounter with law enforcement justified by probable cause.[34] In any event, the dog sniff did not unreasonably intrude upon any reasonable expectation of privacy, no matter how innocuously the vehicle was parked at the gas station.[35] When the drug detection dog does not physically intrude into a constitutionally protected area,[36] the dog sniff is not a "search"

---

[31] *Id.*

[32] See *State v. Bray*, 297 Neb. 916, 902 N.W.2d 98 (2017).

[33] Brief for appellant at 13.

[34] See *State v. Lowery*, 23 Neb. App. 621, 875 N.W.2d 12 (2016).

[35] See *Illinois v. Caballes, supra* note 12.

[36] Compare *Florida v. Jardines, supra* note 17.

at all.[37] Ferguson does not suggest that the gas station was a constitutionally protected area.

The district court did not err in denying Ferguson's motion to suppress.

## 2. SUSTAINING HEARSAY
### OBJECTION REGARDING
### KOCH'S CRIMINAL HISTORY

[17] We turn next to Ferguson's contention that the court should have allowed him to adduce testimony from Schwarz that Koch's vehicle had been involved in prior drug possession charges not involving Ferguson. The court sustained the State's objection to the proposed testimony on the ground of hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.[38]

[18] Ferguson asserts that Schwarz' testimony as to what he discovered while running a records search for the vehicle was not hearsay. He cites to no law in support of such proposition. Our courts have repeatedly held that testimony as to the content of records, entered into evidence to prove the truth of the information contained therein, is hearsay.[39] Ferguson's theory of defense was that the methamphetamine belonged to someone else. Schwarz' testimony of what he remembered of the content of the databases was proffered for the truth of the matters asserted: that there were other incidents involving illegal drugs in Koch's vehicle that did not involve Ferguson. The proffered testimony was hearsay.

[19-21] Hearsay is not admissible except as provided by the rules of evidence or by other rules adopted by the statutes

---

[37] See *Illinois v. Caballes, supra* note 12.

[38] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[39] See, e.g., *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992); *Hoelck v. ICI Americas, Inc.*, 7 Neb. App. 622, 584 N.w.2d 52 (1998); *State v. Ward*, 1 Neb. App. 558, 510 N.W.2d 320 (1993).

of the State of Nebraska or by the discovery rules of this court.[40] Therefore, the proponent of the hearsay evidence has the burden of identifying the appropriate exception and demonstrating that the testimony falls within it.[41] When the opposing party objects to evidence as hearsay and the trial court sustains the objection, the proponent is required to point out the possible hearsay exceptions in order to preserve the point for appeal.[42]

During trial, Ferguson did not identify the appropriate exception to the hearsay rule that would render the proffered testimony admissible, and he makes no argument on appeal that it falls under any exception. Ferguson did not offer the records themselves into evidence. We find no merit to Ferguson's argument that the district court erred in refusing to allow into evidence Schwarz' testimony concerning what he remembered to be the content of the databases he searched during the stop.

### 3. Overruling Foundation Objection to Telephone Conversation

[22,23] Ferguson next contests the admission into evidence of Ferguson's statements to the children's mother during a telephone conversation. The court overruled Ferguson's foundation objection to the testimony. We have long held that there is sufficient foundation to render communications by telephone admissible in evidence where the identity of the person with whom the witness spoke or the person whom he or she heard speak is satisfactorily established.[43] And a witness testifying positively that he or she recognized, by voice, the person with

---

[40] *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[41] *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009).

[42] *Id.*

[43] See, *Midland Properties v. Wells Fargo, supra* note 4; *Linch v. Carlson*, 156 Neb. 308, 56 N.W.2d 101 (1952).

whom he or she was talking, is generally sufficient to present the evidence to the jury to determine whether the conversation actually occurred.[44]

While additional evidence as to the surrounding circumstances of the telephone conversation may be necessary where the witness was unable to identify the caller by voice,[45] that was not the circumstance here. The children's mother testified that as a result of having previously dated Ferguson for 8 years, she had spoken to him on the telephone before and knew the sound of his voice. She testified that she was able to identify Ferguson by his voice and that it was Ferguson with whom she had been speaking over the telephone. The district court did not abuse its discretion in overruling Ferguson's foundation objection to the children's mother's testimony.

### 4. SUFFICIENCY OF EVIDENCE

Having addressed the assignments of error related to the evidentiary rulings at trial, we now consider Ferguson's argument that the evidence was insufficient to support the jury's verdict that he committed child abuse. Ferguson's challenge to his child abuse conviction derives from the possibility the jury concluded that the presence of methamphetamine in the vehicle within reach of the children—as opposed to Ferguson's alleged reckless driving—was child abuse. Ferguson concedes that the evidence that Ferguson was swerving the vehicle all over the road was legally sufficient to support his conviction for child abuse, but argues that the facts relating to the methamphetamine in the vehicle were not.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such

---

[44] See *id.*

[45] See *Midland Properties v. Wells Fargo, supra* note 4.

matters are for the finder of fact.[46] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[47]

Section 28-707(1) provides in relevant part that "[a] person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be: (a) Placed in a situation that endangers his or her life or physical or mental health." "Endangers" for purposes of § 28-707(1)(a) means to expose a minor child's life or health to danger or the peril of probable harm or loss.[48] The purpose of criminalizing conduct under the statute is that where a child is endangered, it may be injured; it is the likelihood of injury against which the statute speaks.[49] Criminal endangerment in § 28-707(1)(a) encompasses not only conduct directed at the child but also conduct which presents the likelihood of injury due to the child's having been placed in a situation caused by the defendant's conduct.[50]

Ferguson was charged with negligently placing his children in a situation that endangered their lives or physical or mental health under § 28-707(3). Section 28-707(9) explains that "negligently" in this context "refers to criminal negligence and means that a person knew or should have known of the danger involved and acted recklessly, as defined in section 28-109, with respect to the safety or health of the minor child." Neb. Rev. Stat. § 28-109 (Supp. 2015), in turn, defines "[r]ecklessly" as

acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable

[46] *State v. McCurdy, supra* note 5.

[47] *Id.*

[48] *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017); *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990).

[49] *Id.*

[50] *Id.*

risk that the material element exists or will result from his or her conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to the actor, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Without citation to legal authority, Ferguson argues that being within reach of methamphetamine is insufficient to support a child abuse conviction, because "[a] child can at almost any time reach an object that could be harmful to the child if used by the child. For example, knives in a kitchen drawer, lighters in a drawer, alcohol in a cabinet, and guns on a shelf."[51] Ferguson also points out that the only time the children were alone in the vehicle within reach of the methamphetamine was when law enforcement removed Ferguson from the vehicle in an attempt to identify him.

[24,25] We find no merit to Ferguson's arguments that the evidence was insufficient to support the child abuse conviction. First, Ferguson's reliance on the inability to know the factual theory underlying the jury's general verdict is misplaced. Jurors in a criminal case are presumed well equipped to analyze the evidence in order to avoid resting a guilty verdict on a factually inadequate theory.[52] Thus, if there are two possible factual grounds for the jury's general verdict, one factually inadequate and unreasonable and the other factually adequate and reasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable and factually adequate ground.[53]

---

[51] Brief for appellant at 20.

[52] *Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). See, also, e.g., *U.S. v. Richardson*, 421 F.3d 17 (1st Cir. 2005).

[53] See, *People v. Guiton*, 4 Cal. 4th 1116, 847 P.2d 45, 17 Cal. Rptr. 2d 365 (1993); *People v. Spaccia*, 12 Cal. App. 5th 1278, 220 Cal. Rptr. 3d 65 (2017).

But we also reject the reckless driving and access to methamphetamine as two disparate factual theories. The jury was presented with evidence that on March 9, 2016, Ferguson, without a license, drove recklessly and was falling asleep at the wheel during rush-hour traffic at a speed of approximately 65 miles per hour, while his young children, able to unbuckle themselves, could have reached for methamphetamine contained in a bag lying on the floorboard and ingested it. The jury was presented with further evidence that Ferguson chose to leave the bag of methamphetamine in the vehicle with his unattended children while he answered questions in Schwarz' cruiser. This evidence was sufficient to support the conviction of child abuse.

Finally, even if we were to parse out the children's access to the methamphetamine from the reckless driving, that evidence was legally sufficient to support the child abuse conviction. Unlike many of the common household risks illustrated by Ferguson, the risk of access to methamphetamine, an illegal and toxic substance, involves a gross deviation from the standard of conduct that a law-abiding person would observe.

In *Carosi v. Com.*,[54] the Supreme Court of Virginia rejected a similar argument that storage of illegal drugs where children could have obtained access to them was no different than the common methods of storing various dangerous household items. "[T]hey differ," the court explained, "in the important respect that the latter items, though unquestionably dangerous if left accessible to unsupervised children, are possessed by the parent or custodian for lawful purposes, whereas drugs that are illegally present . . . are not."[55] The court in *Carosi* further explained:

> The myriad factors to be considered in such cases—such as the ages of the children, the length of the exposure, the level of supervision or lack thereof, and the quantity

---

[54] *Carosi v. Com.*, 280 Va. 545, 701 S.E.2d 441 (2010).

[55] *Id.* at 556, 701 S.E.2d at 447.

and variety of the drugs—suggest that as with most cases where criminal negligence is at issue, this determination is necessarily fact-specific [and] best left to the jury.[56] We agree.

We have explained that "'[a]s a matter of practicability for general application, child abuse statutes, by virtue of the nature of their subject matter and the nature of the conduct sought to be prohibited, usually contain broad and rather comprehensive language.'"[57] There was evidence that methamphetamine was within reach of the children both while Ferguson was driving, tired and distracted, and while they were unattended in the stopped vehicle. The jury could have inferred that the children, ages 8 and 6, were likely to see the bag of methamphetamine and explore its contents out of curiosity. Schwarz testified that he had received extensive training in narcotics and that methamphetamine is very toxic and potentially lethal to children if they accidentally ingest it. He opined that a child who is within reach of methamphetamine is placed in a situation that endangers the child's life.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of negligent endangerment child abuse beyond a reasonable doubt.[58]

## 5. Excessive Sentences

Lastly, Ferguson asserts that the court imposed excessive sentences. There is no dispute that the sentences imposed were within the statutory limits, but Ferguson argues that his sentences were excessive, because probation would have been better suited to Ferguson's rehabilitative needs. An appellate court will not disturb a sentence imposed within the statutory limits

---

[56] *Id*. at 557, 701 S.E.2d at 447-48.

[57] *State v. Mendez-Osorio, supra* note 48, 297 Neb. at 534, 900 N.W.2d at 786-87, quoting *State v. Crowdell, supra* note 48.

[58] See *State v. Swindle, supra* note 7.

absent an abuse of discretion by the trial court.[59] An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.[60]

The court explained that it was not placing Ferguson on probation because he was unlikely to complete probation successfully, given Ferguson's history during the proceedings of not showing up to court and not going to his probation evaluation on time. The court further noted that Ferguson was convicted of other crimes committed while awaiting trial. Ferguson himself admitted at the sentencing hearing that he would probably fail probation. The court did not abuse its discretion in sentencing Ferguson to jail time with postrelease supervision, rather than to probation.

### VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[59] *Id.*

[60] *Id.*