IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. PAULY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRIAN J. PAULY, APPELLANT.

Filed May 10, 2022.    No. A-21-713.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Brian J. Pauly appeals his plea based conviction of possession with intent to deliver methamphetamine. He assigns that his trial counsel was ineffective in certain respects and that he received an excessive sentence. For the reasons explained below, we affirm.

### BACKGROUND

On May 22, 2020, a law enforcement officer with the Lancaster County sheriff's office observed a vehicle with Texas license plates traveling eastbound on Interstate 80. The officer observed that the vehicle was traveling 69 miles per hour in a 65 mile per hour zone and was following a semi at a very close and unsafe distance. He therefore initiated a traffic stop and made contact with the driver, who he later identified as Pauly. Pauly provided his Iowa driver's license and the rental agreement for the vehicle and accompanied the officer to his cruiser.

During the time it took to issue Pauly a warning, the officer became suspicious that Pauly was involved in criminal activity. After the traffic stop was complete and the warning had been issued, Pauly continued to speak with the officer, but he denied consent to search the vehicle. The officer therefore requested a canine unit to come to the scene. The drug detection dog completed an exterior sniff of Pauly's vehicle and alerted and indicated to the odor of narcotics coming from the vehicle. A subsequent search of the vehicle revealed 27.8 grams of methamphetamine and three glass pipes.

The State filed an information charging Pauly with possession with intent to deliver methamphetamine, in a quantity of at least 10 grams but less than 28 grams, which is a Class ID felony. Neb. Rev. Stat. § 28-416(10)(c) (Cum. Supp. 2020). Pursuant to a plea agreement with the State, Pauly pled no contest to an amended charge of possession with intent to deliver methamphetamine, with no quantity specified, which is a Class II felony. § 28-416(2). Pauly was sentenced to 6 to 10 years' imprisonment. He timely appeals.

## ASSIGNMENTS OF ERROR

Pauly assigns, summarized and renumbered, that (1) trial counsel was ineffective in violation of his Sixth Amendment rights, (2) trial counsel was ineffective in instructing him on his plea options, (3) trial counsel was ineffective in advising him to waive his right to a trial by a jury of his peers, (4) trial counsel was ineffective in failing to follow through with the motion to suppress and advising him to plead no contest, (5) trial counsel was ineffective in advising the judge that he was not a good candidate for probation, and (6) he received an excessive sentence.

## STANDARD OF REVIEW

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Chairez, supra*.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*.

## ANALYSIS

*Ineffective Assistance of Counsel.*

Pauly assigns five errors related to the effectiveness of his trial counsel. Out of those five errors, only two have been properly presented for review. The first error alleges that Pauly's trial counsel was ineffective in violation of his Sixth Amendment rights. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient

performance. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Because Pauly does not allege how trial counsel performed deficiently, this assigned error lacks the specificity required on direct appeal.

The next two errors allege that Pauly's trial counsel was ineffective in instructing him on his plea options and in advising him to waive his right to a trial by jury. Although these alleged errors are more specifically assigned, Pauly does not argue them in his brief. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). We therefore do not address Pauly's first three assignments of error.

Pauly next assigns that his trial counsel was ineffective in failing to follow through with a motion to suppress he filed prior to Pauly entering his plea and advising him to plead no contest. He argues that the motion to suppress the evidence found pursuant to the search of his vehicle would have been successful, and thus, he was prejudiced by trial counsel's decision not to pursue the motion and advise him to plead to the amended charge. We disagree.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018). Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded *Id*. The ultimate touchstone of the Fourth Amendment is reasonableness. *Id*. Reasonableness is determined by balancing the intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests. *Id*. A seizure that is lawful at its inception can violate the Fourth Amendment by its manner of execution. *Id*.

It is a bit unclear whether Pauly challenges the legality of the traffic stop. He notes in his brief that the traffic stop, the detention, and the search of his vehicle were all contrary to law, but his argument focuses on the extension of the duration of the traffic stop. Specifically, Pauly's assigned error is "counsel was ineffective in failing to follow through with the motion to suppress and advising [him] to plead 'No Contest'" and his specific argument is that law enforcement had no reasonable suspicion or probable cause to initiate a traffic stop and no reasonable suspicion to continue to detain him for the canine sniff. As to that specific assigned error and argument, we find that the record is sufficient to reject his claim of ineffective assistance because the probable cause affidavit included in our record affirmatively refutes it. The initial stop was proper because, according to the probable cause affidavit of the officer who conducted the traffic stop, the officer observed Pauly speeding and following another vehicle too closely. A stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Traffic violations, no matter how minor, create probable cause to stop the driver of a vehicle. *Id*. Thus, here, the officer had probable cause to conduct a stop of Pauly's vehicle based on the observed traffic violations. Accordingly, a motion to suppress the initial stop of the vehicle would not have been successful; therefore, trial counsel was not ineffective in failing to pursue a motion to suppress related to the traffic stop. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument).

Pauly's primary argument is that the officer improperly extended the duration of the traffic stop. In the officer's probable cause affidavit, he admits that the traffic stop was complete before

he summoned the canine unit to conduct a dog sniff of Pauly's vehicle. The fact that a dog sniff is conducted after the time reasonably required to complete the initial mission of the traffic stop is not, in and of itself, a Fourth Amendment violation. *State v. Ferguson, supra*. A Fourth Amendment violation arises only when the dog sniff is conducted after the initial mission of a stop is completed and the officer lacks probable cause or reasonable suspicion to investigate further. *Id*. Where, on the other hand, the officer has probable cause or reasonable suspicion to continue the detention after the initial mission of the stop is completed, the officer may conduct a drug detection dog sniff while the suspect is properly detained. *Id*. Thus, the Nebraska Supreme Court has held that seizures that took place in order to facilitate dog sniffs after the completion of traffic infraction investigations did not violate the Fourth Amendment when the officers had reasonable suspicion of criminal activity, developed during the ordinary inquiries incident to the stops. *Id*. See, also, *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017); *State v. Verling*, 269 Neb. 610, 694 N.W.2d 632 (2005).

According to the officer's probable cause affidavit in the present case, he gathered reasonable suspicion that Pauly was involved in criminal activity during the time he was completing the mission of the traffic stop. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Rogers, supra*. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *Id*.

The Supreme Court has previously found that factors similar to those present here created reasonable, articulable suspicion to continue to detain a motorist for a canine sniff. See *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). There, the Supreme Court articulated that

[t]hose factors included an officer's testimony that (1) the motorist had not taken the most direct route from the occupants' stated point of origin to their stated destination and (2) the driver or passengers gave implausible or contradictory answers regarding their travel plans. And, although of limited usefulness, a court may consider, with other factors, evidence that the occupants exhibited nervousness. Finally, a court can consider, as part of the totality of the circumstances, the officer's knowledge of a person's drug-related criminal history.

Moreover, factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. For example, evidence that a motorist is returning to his or her home state in a vehicle rented from another state is not inherently indicative of drug trafficking when the officer has no reason to believe the motorist's explanation is untrue. But a court may nonetheless consider this factor when combined with other indicia that drug activity may be occurring -- particularly the occupants' contradictory answers regarding their travel purpose and plans or an occupant's previous drug-related convictions.

*Id*. at 462, 755 N.W.2d at 74-75 (internal citations omitted).

Here, the officer detailed that his suspicions were aroused because the rental agreement that Pauly showed him indicated that he picked the vehicle up in Arizona and was to return it in Arizona, which was not consistent with the travel plans he related to the officer of flying to Las Vegas to visit his sister and then driving home to Iowa in a rental car. Further, Pauly could not

explain to the officer why he was driving back home, rather than flying home, which the officer noted was more expensive and took longer. The officer discovered that Pauly was a convicted felon and had a criminal history including a conviction for possession with intent to deliver. On the front passenger seat of Pauly's vehicle, the officer observed a notebook that appeared to be a handwritten "owe note ledger," which the officer opined was common for individuals who move large quantities of narcotics. Finally, the officer observed that Pauly was extremely nervous while speaking with him and that his nervousness increased throughout the duration of the traffic stop and peaked when asked whether he had any illegal items in the vehicle. The officer opined, based on his training and experience, that nervousness among the "law abiding general motoring public" declines throughout a traffic stop where a warning is being issued.

Pauly fails to assign or argue any additional facts which conflict with the facts set forth in the probable cause affidavit contained within the record. On this record we conclude that the officer had reasonable suspicion that Pauly may be involved in illegal drug activity in order to justify a continued detention of Pauly and a dog sniff of the vehicle. And the officer's reasonable suspicion combined with the dog's indication supported the search of the vehicle. See *State v. Draganescu, supra* (generally, factors supporting officer's reasonable suspicion of illegal drug activity when coupled with well-trained dog's positive indication of drugs in vehicle will give officer probable cause to search vehicle). Accordingly, the continued detention of Pauly and the search of his vehicle did not violate the Fourth Amendment. Therefore, his motion to suppress would have been unsuccessful, and his trial counsel was not ineffective in failing to pursue it.

*Sentencing.*

Pauly assigns two errors related to sentencing. He first claims that his trial counsel was ineffective in advising the court at the sentencing hearing that he was not a good candidate for probation. Because we disagree with Pauly's interpretation of his trial counsel's comments, we find that trial counsel was not ineffective in this regard.

Pauly is correct when he points out that trial counsel informed the court at sentencing that "based on [his] history . . . and the [presentence investigation] score, that it would look on the outset that he's not a good candidate for probation." But counsel continued to state, "[B]ut, Judge, I would draw your attention to the letters that were submitted, and they paint a much different picture and I think they provide some context." Pauly also correctly notes that his counsel admitted that putting him on probation would be a risk, but we observe that trial counsel argued that "he's more than worth the risk."

It is clear from the context of counsel's comments, as well as the totality of his argument at sentencing, that counsel recognized that Pauly may not appear to be an appropriate candidate for probation, but he asked the court to take a risk and impose probation anyway. Trial counsel's argument at sentencing culminated with, "I believe he's a good candidate for probation. He's worth taking the risk on. We would ask for a sentence of probation here today."

We also note that the court reviewed the presentence investigation report, which included the information that trial counsel highlighted. Thus, counsel was not telling the court anything it did not already know, and Pauly cannot show that he was prejudiced by counsel's comments. Based on the foregoing, we do not find that counsel's comments at sentencing rise to the level of ineffective assistance of counsel. We therefore reject this claim.

Pauly also assigns that the district court abused its discretion in imposing an excessive sentence. We find no abuse of discretion.

Possession of methamphetamine with no amount specified is a Class II felony. § 28-416(2). Class II felonies are punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Therefore, Pauly's sentence is within the statutory limits, and we review it for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The court made clear at sentencing that it considered the information in the presentence investigation report and the statutorily required factors. It noted that Pauly had twice been found with "dealer quantities" of various illegal substances, recognizing that part of the court's job was to protect the public and to prevent those types of drugs from being sold in Nebraska. The court observed that Pauly was still using drugs as of three months prior to sentencing, which led the court to believe that he was either not doing well in drug treatment or had not been in treatment at that time. Ultimately the court found that a sentence of prison was appropriate and explained its rationale for that decision. We cannot say that the sentence imposed was untenable or clearly against justice, conscience, reason, or evidence. Accordingly, Pauly's sentence was not an abuse of discretion and is affirmed.

## CONCLUSION

We find that several of Pauly's assigned errors alleging ineffective assistance of trial counsel were not properly presented for our review, and we reject his remaining claims. We further find that the district court did not abuse its discretion in the sentence imposed. Therefore, we affirm the conviction and sentence.

AFFIRMED.